**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CASE NO.**

**CLASS ACTION**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware limited liability company, and
SERIES 16-08-483, a series of MSP
Recovery Claims, Series LLC,

      Plaintiffs,

v.

NEW YORK CENTRAL MUTUAL FIRE
INSURANCE COMPANY, a New York
corporation,

      Defendant.
_____/

**PLAINTIFFS' CLASS ACTION**
**<u>COMPLAINT FOR DAMAGES</u>**

## TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................................................ 4

PLAINTIFFS' CLASS REPRESENTATIVE CLAIM ........................................................ 5

    The R.L. claim demonstrates Plaintiffs' right to recover for Defendant's failure to meet
its reimbursement obligations under the MSP Law. ........................................................ 6

JURISDICTION AND VENUE ........................................................................................ 13

BACKGROUND ............................................................................................................... 13

    I.      Medicare Advantage Organizations ................................................................ 14

    II.     The Medicare Payment Process ...................................................................... 14

    III.    CMS' Standard for Storing Digital Health Insurance Claims Data .................... 15

    IV.    Plaintiffs' Use of EDI to Analyze Claims Data and Identify Reimbursement

             Claims Under the MSP Act ............................................................................. 19

THE PARTIES ................................................................................................................. 20

CLASS DEFINITION ...................................................................................................... 21

CLASS ALLEGATIONS .................................................................................................. 22

    a.     Numerosity .................................................................................................... 23

    b.     Commonality .................................................................................................. 23

    c.     Typicality ....................................................................................................... 24

    d.     Adequacy ....................................................................................................... 25

    e.     Ascertainability .............................................................................................. 25

CAUSES OF ACTION ..................................................................................................... 27

COUNT I .......................................................................................................................... 27

    Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A) ............................................ 27

Count II ............................................................................................................................ 29

    Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract ...... 29

JURY TRIAL DEMAND .................................................................................................. 30

PRAYER FOR RELIEF.............................................................................................. 30

CERTIFICATE OF SERVICE ..................................................................................... 32

Plaintiffs, MSP Recovery Claims, Series LLC, a Delaware limited liability company and Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC (collectively, "Plaintiffs"), on behalf of itself and all others similarly situated, brings this action against New York Central Mutual Fire Insurance Company, a New York corporation ("NYC" or "Defendant"), and states as follows:

## NATURE OF THE ACTION

1.      This is a class action lawsuit under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer ("MSP") Act or the MSP Law, arising from Defendant's systematic and uniform failure to reimburse conditional Medicare payments.

2.      Defendant has failed to fulfill its statutory duties under the MSP Law as a "no-fault" insurer. Specifically, Defendant has repeatedly failed to provide primary payment, or reimburse secondary payments made by Plaintiffs' assignors and Class Members, on behalf of Medicare beneficiaries enrolled in Part C of the Medicare Act (the "Enrollees") for medical expenses resulting from injuries sustained in automobile accidents (the "accident-related medical expenses"). The Enrollees were enrolled in Medicare Advantage health plans offered by Plaintiffs' assignors and Class Members, i.e., Medicare Advantage Organizations ("MAOs"), which suffered an injury-in-fact from Defendant's failure to reimburse, and accordingly, have standing to sue under 42 U.S.C. § 1395y(b)(3)(A).

3.      Plaintiffs' assignors and the putative Class Members are MAOs that provided Medicare benefits to the Enrollees.  These Enrollees suffered injuries related to an accident and Plaintiffs' assignors and the putative Class Members paid for medical items and/or services required by the Enrollees as a result of the accident. Because the Plaintiffs' assignors' and Class

Members' Enrollees were also covered by no-fault policies issued by the Defendant, Defendant is a primary payer under the MSP Law and must reimburse Plaintiffs and the putative Class Members for their payment of accident-related medical expenses.

4.      Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or an MAO. As described in detail below, Plaintiffs' assignors and the Class Members have each suffered an injury in fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations.

5.      On behalf of itself and the Class, Plaintiffs seek, *inter alia*, double damages under the MSP Law for Defendant's failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period. This lawsuit, like others, advances the interests of the MSP Act and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

## PLAINTIFFS' CLASS REPRESENTATIVE CLAIM
## RELATING TO MEDICARE PART C BENEFICIARIES

6.      Plaintiffs are the class representatives of a class that consists of MAOs and their assignees. Accordingly, Plaintiffs set forth below an example of Defendant's systematic and uniform failure to fulfill its statutory duties as a "no-fault" insurer. In this example, Plaintiffs describe Defendant's failure to reimburse conditional payments and how that failure caused an injury in fact to an MAO, which subsequently assigned its recovery rights to Plaintiffs.

**<u>The R.L. claim demonstrates Plaintiffs' right to recover for Defendant's failure to meet its reimbursement obligations under the MSP Law.</u>**

7.      On September 28, 2014, R.L. was enrolled in a Medicare Advantage plan issued and administered by Health Insurance Plan Of Greater New York ("HIP"). Health Insurance Plan Of Greater New York is an MAO.

8.      On September 28, 2014, R.L. was injured in an accident. At the time of the accident, R.L. was also insured under a no-fault policy issued by Defendant. As a direct result of the accident, R.L. sustained injuries which include but are not limited to the following:

    i.      816.02 – Closed fracture of distal phalanx or phalanges of hand

    ii.     883.1 – Open wound finder(s), complicated

    iii.    879.8 – Open wound(s) (multiple) of unspecified site(s), without mention of complication

    iv.     719.44 – Pain in joint, hand

    v.      V72.84 –Pre-operative examination, unspecified

    vi.     905.8 – Late effect of tendon injury

    vii.    715.14 – Osteoarthrosis, localized, primary, hand

    viii.   883.2 – Open wound of finger(s), with tendon involvement

A list of the diagnosis codes and injuries assigned to R.L. in connection with R.L.'s accident-related treatment is attached hereto as **Exhibit A**.

9.      As a direct and proximate result of the accident and the injuries detailed above, R.L. required medical items and services. Those medical items and services include but are not limited to:

i.      NDC–53746010901 HYDROCODON-ACETAMINOPHEN 5-325

ii.     12001 – Repair-Simple Procedures on the Integumentary System

iii.    80053 – Comprehen metabolic panel

iv.     J0690 – Injection, cefazolin sodium, 500 mg

v.      85025 – Hematology and Coagulation Procedures

vi.     96365 – Therapeutic, Prophylactic, and Diagnostic Injections and Infusions

vii.    73130 – X-ray exam of hand

viii.   99284 – New or Established Patient Emergency Department Services

ix.     85610 – Hematology and Coagulation Procedures

x.      36415 – Venous Procedures

xi.     NDC – 68180012202 CEPHALEXIN 500 MG CAPSULE

xii.    99285 –Emergency dept visit

xiii.   15852 – Dressing change not for burn

xiv.    99213 – Established Patient Office or Other Outpatient Services

xv.     99204 – Office/outpatient visit new

xvi.    NDC – 63304069301 CLINDAMYCIN HCL 300 MG CAPSULE

xvii.   93010 – Cardiography Procedures

xviii.  85027 – Hematology and Coagulation Procedures

xix.    G0463 – Hospital outpatient clinic visit for assessment and management of patient

xx.     93005–Electrocardiogram tracing

xxi.    88304 – Surgical Pathology Procedures

xxii.    20650 – General Introduction or Removal Procedures on the Musculoskeletal System

xxiii.    26433 – Repair, Revision, and/or Reconstruction Procedures on the Hand and Fingers

xxiv.    26236 – Excision Procedures on the Hand and Fingers

xxv.    C1713–Anchor/screw for opposing bone-to-bone or soft tissue-to-bone (implantable)

xxvi.    88311–Decalcity tissue

xxvii.    88304–Tissue exam by pathologist

xxviii.    26070 – Incision Procedures on the Hand and Fingers

xxix.    70600–Fluroscope examination

xxx.    01810 – Anesthesia for Procedures on the Forearm, Wrist, and Hand

xxxi.    73140–X-ray exam of finger(s)

An account of the items and services provided to R.L. as a result of the accident are included within **Exhibit A**. The medical services were rendered by medical providers between September 28, 2014 and November 6, 2014.

10.    The medical providers subsequently issued a bill for payment of the accident-related medical expenses to R.L.'s MAO, Health Insurance Plan Of Greater New York, which was fully responsible for all medical expenses incurred by R.L. Health Insurance Plan Of Greater New York paid $5,232.23 for R.L.'s accident-related medical expenses. While Plaintiff alleges the amount paid solely for purposes of completeness, the medical provider actually billed and charged Health Insurance Plan Of Greater New York $26,853.67 for R.L.'s accident-related

medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff seeks double the amount of $26,853.67 as damages for this particular claim.

11.    Defendant is liable to pay this amount because it was R.L.'s primary payer by virtue of a no-fault insurance policy that it issued to R.L. In fact, Defendant reported and admitted to the Centers for Medicare & Medicaid Services ("CMS") that it was the primary payer for R.L.[1] Further, Defendant even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse Health Insurance Plan Of Greater New York.  A true and correct copy of Defendant's report to CMS is attached hereto as **Exhibit C**.[2]  Despite Defendant's reporting that it was a primary payer, and the corresponding admission that it should have paid for R.L.'s accident-related injuries, Defendant failed to do so, giving rise to a claim under the MSP Act.

12.    Although Defendant reported that it was the primary payer for R.L.'s claim, Plaintiff reserves the right to pursue reimbursement for R.L.'s medical expenses against any of Defendant's subsidiaries should one of these be the true primary payer.  Defendant's corporate structure is as follows:

---

[1] Plaintiff has identified at least 139 instances where Defendant admitted it was to provide primary payment on behalf of Enrollees.  A list of such instances is attached hereto as **Exhibit B**.

[2] Plaintiff obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendant, not the Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendant chose to report.



13.     Plaintiff has the legal right to pursue these MSP Act claims pursuant to a series of

valid assignment agreements.

14.     Specifically, on March 20, 2018, Health Insurance Plan of Greater New York

irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to

Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC and to MSP

Recovery, LLC, a Florida Limited Liability Company (the "Health Insurance Plan of Greater

New York Assignment").   The Health Insurance Plan of Greater New York Assignment is

attached hereto as **Exhibit D-1**, and expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> Assignee, and any of its successors and assigns, any and all of Assignor's right,
> title, ownership and interest in and to all Assigned Medicare Recovery Claims,
> whether based in contract, tort, statutory right, and any and all rights (including,
> but not limited to, subrogation) to pursue and/or recover monies that Assignor
> had, may have had, or has asserted against any party in connection with the
> Assigned Medicare Recovery Claims and all rights and claims against primary
> payers and/or subject to the definition of Assigned Medicare Recovery Claims,
> third parties that may be liable to Assignor arising or relating to the Assigned
> Medicare Recovery Claims, including claims under consumer statutes and laws,
> and all information relating thereto, as may be applicable.
>
> The transfer, grant, right, or assignment of any and all of Assignor's right, title,
> ownership, interest and entitlements in and to the Assigned Medicare Recovery

Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

**Ex. D-1**.

15.    On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the Health Insurance Plan of Greater New York Assignment to Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC ("Series Assignment"). The Series Assignment from MSP Recovery, LLC to Series 16-08-483, which was ratified and approved by Health Insurance Plan of Greater New York, is attached hereto as **Exhibit D-2,** and states:

> . . . MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee, Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC, a Delaware Series Limited Liability Company, and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", "Assigned Assets", "Assigned Medicare Recovery Claims" and "Assigned Documents" (and all proceeds and products thereof) as such terms may be defined in the March 20, 2018 Assignment Agreement.

**Ex. D-2**.

16.    Although not required by the MSP Act, the governing regulations, or interpretive case law, Plaintiff, on June 19, 2018, issued a coordination of benefits letter to Defendant, which provided Defendant access to the foregoing information regarding the R.L. claim and sought additional information related to reimbursements owed by Defendant to Plaintiffs' assignors (the "NYCM Coordination of Benefits Letter"). Defendant was required to provide the requested information, but has failed to do so. A true and correct copy of Plaintiffs' Coordination of Benefits Letter to Defendant is attached hereto as **Exhibit E**.

17.    As shown by the NYCM Coordination of Benefits Letter and Defendant's own

claims reporting, Defendant had actual and constructive knowledge that it was the primary payer

for R.L.'s accident-related expenses.

18.     Accordingly, Plaintiff is entitled to collect double damages against Defendant for

its failure to reimburse Health Insurance Plan Of Greater New York's conditional payment for

R.L.'s accident-related expenses.

19.     Detailed allegations regarding the foregoing representative claim, i.e., specific

payments, coverage determinations, etc., are not required in order to plead an MSP Act claim

but, in any event, said information is in Defendant's possession and will be located and assessed

through the process of discovery. However, the allegations set forth herein plainly demonstrate

that Plaintiffs' assignors suffered damages as a direct result of Defendant's individual failures to

reimburse conditional payments as required under the MSP law.

20.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no

payment may be made under [the Medicare statute] for any expenses incurred for items or

services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or

injury."

21.     Because this Section contains an express condition of payment – that is, "no

payment may be made" – it explicitly links each Medicare payment to the requirement that the

particular item or service be "reasonable and necessary."

22.     Once an MAO makes a payment for medical items and services on behalf of its

Enrollees, the payment is conclusive proof that the items and services were reasonable and

necessary.

23.     The items and services received by and paid on behalf of the Enrollees, including

R.L., were reasonable and necessary.

24.     All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendant.

25.     Pursuant to Plaintiffs' limited liability agreement and Delaware law, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff. Therefore, Plaintiff may pursue Health Insurance Plan Of Greater New York's rights to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendant.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

27.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of New York because it is the district in which the Defendant is domiciled.

28.     This Court has personal jurisdiction over Defendant as Defendant is authorized and licensed to conduct business in New York, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits in this judicial district.

29.     All conditions precedent to this action have occurred, been performed, or have been waived, including meeting any purported threshold amount to the applicable.

## BACKGROUND

30.     The MSP Law declares that Medicare or MAOs are "secondary payers" to all other sources of coverage, and, consequently, MAOs that are injured as a result are empowered

to recoup from the rightful primary payer if Medicare or an MAO pays for a service that fell

within overlapping insurance coverage for a Medicare Part C beneficiary.

31.     Defendant is a primary plan under § 1395y(b)(2)(A) because it is a no-fault

insurer. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan

or large group health plan…a workmen's compensation law or plan, an automobile or liability

insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. §

411.21 (same).

**I.      Medicare Advantage Organizations**

32.     The Medicare Advantage program, otherwise known as Part C, was enacted in

1997.  Under the Medicare Advantage program, a private insurance company, operating as an

MAO, administers the provision of Medicare benefits pursuant to a contract with CMS. *See*

**Exhibit F**, *MAO Directory provided by CMS*.

33.     CMS pays the MAO a fixed fee per Enrollee and the MAO provides, at minimum,

the same benefits an Enrollee would receive under traditional Medicare. MAOs are a private

sector analog to traditional Medicare and have the same rights to reimbursement from primary

payers, like the Defendant here.

**II.     The Medicare Payment Process**

34.     An MAO must process and pay or deny claims promptly to comply with the

specific requirements established by federal law, federal regulations, and the terms of the its

contract with CMS. Federal law requires Medicare and MAOs to pay within 30 days, 42 C.F.R. §

422.520(a), for only those medical expenses that are reasonable and necessary. 42 U.S.C. §

1395y(a)(1)(A).

III.    **CMS' Standard for Storing Digital Health Insurance Claims Data**

35.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format.   According the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").[3]

   a.    The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

   b.    The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

   c.    Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

36.    Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

   a.    Dates (including dates of service): the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

      i.    According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to

---

[3] Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month). Sometimes this is alternately expressed as YYYYMMDD.[4]

ii.  The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[5], 2011[6], 2012[7], 2013[8], 2014[9], and 2016.[10]

iii.  CMS has also accepted the MM/DD/YYYY format for its local coverage determination data. *See* Local Coverage Determination ("LCD") Date of Service Criteria.[11]

---

[4] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[5] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[6] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[7] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[8] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277
Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[9] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[10] Medicare Plan Payment Group Enterprise Systems Solutions Group
Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[11] CMS.gov.  Local Coverage Determination (LCD) Date of Service Criteria.  https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

iv.  The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

v.  In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

b.  <u>Medical Diagnosis and Procedure Codes</u>:

i.  Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[1213]

---

[12] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[13] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system.  In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

   ii.  International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date of services is on or after October 1, 2015

   iii.  Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

   iv.  Current Procedural Terminology ("CPT") - CPT[14] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[15]

   v.  Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical

---

[14] CPT codes and descriptions are copyrights f the American Medical Association Current Procedural Terminology.

[15] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

characteristics and similar costs.[16]

    vi.  Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[17]

    vii.  The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

    viii.  The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

    ix.  Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

**IV.    Plaintiffs' Use of EDI to Analyze Claims Data and Identify Reimbursement Claims Under the MSP Act.**

    37.    Using a software system (the "MSP System"), designed and developed by Plaintiffs, Plaintiffs can capture, compile, synthesize, and funnel large amounts of data to

---

[16] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[17] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

identify claims class-wide. The MSP System captures data from different sources to identify the Class Member enrollees' medical expenses incurred as a result of an automobile accident and which should have been paid for by Defendant. The System can also identify the amounts owed, by using the Defendant's EDI, the MAO's data, and data acquired from outside sources, like the Department of Motor Vehicles, and CMS.

38.    Plaintiffs merge Defendant's data with the information available on the MSP System to discover and identify a Medicare eligible person for whom primary medical payments should have been made, along with any information stored as to potential class members.

39.    The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain any information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a no-fault provider.

## THE PARTIES

40.    Plaintiff, MSP Recovery Claims, Series LLC, is a Delaware series limited liability company with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery Claims, Series LLC's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSP Recovery Claims, Series LLC.

41.    MSP Recovery Claims, Series LLC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain

particular series. All designated series form a part of MSP Recovery Claims, Series LLC and pursuant to MSP Recovery Claims, Series LLC's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by the MSP Recovery Claims, Series LLC. MSP Recovery Claims, Series LLC may receive assignments in the name of MSP Recovery Claims, Series LLC and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, the MSP Recovery Claims, Series LLC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by the MSP Recovery Claims, Series LLC in its own name or it may elect to bring suit in the name of its designated series.

42.    MSP Recovery Claims, Series LLC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to MSP Recovery Claims, Series LLC.

43.    Series 16-08-483, is a series of MSP Recovery Claims, Series LLC with its principal place of business at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

44.    The Defendant is an insurance company that is authorized to and presently conducts business in the State of New York.

45.    Complete diversity exists between the parties.

## CLASS DEFINITION

46.    The putative class (hereinafter referred to as "Class Members") is defined as:

All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, and that made

payments for a Medicare beneficiary's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Beneficiaries that are also covered by a Medicare Advantage plan; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Organizations, or their assignees, for the items and services that were provided for medical items and services related to the claims on behalf of the Medicare Beneficiaries;

This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## CLASS ALLEGATIONS

47.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members, or their assignees, that paid for their beneficiaries' medical expenses, when Defendant should have made those payments as primary payers and should have reimbursed the Class Members.

48.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiffs, as the rightful assignee of MAOs that assigned their recovery rights to Plaintiffs, and to all Class Members. Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

49.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments. The

Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

50.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

a.  **<u>Numerosity</u>**: Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs (including its assignees), throughout the United States, that were not reimbursed by Defendant under a policy which provided Personal Injury Protection ("PIP") or Med Pay coverage for medical expenses arising out of accidents. Thus, the numerosity element for class certification is met.

b.  **<u>Commonality</u>**: Questions of law and fact are common to all members of the Class.  Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C.  Defendant failed to make reimbursement payments, report its Ongoing Responsibility for Medical Treatment ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with its statutory duty to pay or reimburse

Plaintiffs' assignors pursuant to the MSP provisions. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **Typicality**: Plaintiffs' claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiffs' and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiffs possess the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiffs' claims and the Class Members' claims. Plaintiffs' claims are typical of the Class Members' claims because Defendant failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do by their contractual obligations with Enrollees. Plaintiffs' claims are typical because Plaintiffs, like the Class Members, has a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiffs and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiffs' and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiffs' and the

Class Members' claims, as will be Defendant's legal defenses. Plaintiffs' claims are, therefore, typical of the Class.

   d. **<u>Adequacy</u>**: Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs re represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

   e. **<u>Ascertainability</u>**:  Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, and providing notice to such entities could be accomplished by direct communication.

51.    The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class. Defendant, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving Plaintiffs, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

52.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiffs maintain a reasonable methodology for generalized proof of Class-wide impact, using the MSP System designed and developed by Plaintiffs and its counsel. The MSP System captures, compiles, synthesizes and

analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiffs are capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.  Two other courts have recognized the MSP System as a viable method to prove damages in substantially similar cases wherein the plaintiff, like in this case, asserted an MSP private cause of action breach of contract causes of action. *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

53.    Proceeding with a class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

54.    Administering the proposed Class will be relatively simple. Defendant provided

no-fault policies with claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiffs can determine which of the policy holders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff and the Class Members can identify those payments made for medical treatment where the Defendant was (1) the primary payer and (2) for which reimbursement was not made. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017) and *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 15-27940-CA-21 (Fla. 11th Cir. Ct. 2017) using the same methodology.

## CAUSES OF ACTION

55.     Plaintiffs' claims result from Defendant's failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendant issues no-fault insurance policies and is thus a primary payer liable under the MSP Law.

## COUNT I

### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

56.     Plaintiffs incorporate by reference paragraphs 1-55 of this Complaint.

57.     Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated parties.

58.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

59.    Defendant's no-fault policy is a primary plan, which rendered the Defendant a primary payer for accident-related medical expenses.

60.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiffs' assignors paid for items and services which were also covered by no-fault insurance policies issued by Defendant.

61.    More specifically, Plaintiffs' and the Class Members' Medicare beneficiaries were also covered by no-fault, PIP, or medical payments policies issued by the Defendant.

62.    Because the Defendant is a primary payer, the Medicare payments for which Plaintiffs seek reimbursement were conditional payments under the MSP Law.

63.    Defendant was required to timely reimburse Plaintiffs' assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

64.    Plaintiffs and the Class Members have suffered money damages as a direct result of Defendant's failure to reimburse the accident-related medical expenses.

65.    Defendant has derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of Plaintiffs' assignors and the Class Members.

66.    In this case, Defendant failed to administratively appeal Plaintiffs' assignors' right to reimbursement within the administrative remedies period on a class wide basis. Defendant, therefore, is time-barred from challenging the propriety or amounts paid.

67.    Plaintiffs, for themselves and on behalf of the Class, brings this claim pursuant to

42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

## Count II

### Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract

68.    Plaintiffs incorporate by reference paragraphs 1-55 of this Complaint.

69.    Plaintiffs' assignors are subrogated the right to recover primary payment from Defendant for the Defendant's breach of contract with their insured, pursuant to the MSP Law. Specifically, Defendant was contractually obligated to pay for medical expenses and items arising out of an accident, and Defendant failed to meet that obligation. This obligation was, instead, fulfilled by the Plaintiffs and other Class Members. Under the MSP provisions, Plaintiffs are permitted to subrogate the enrollee/insured's right of action against the Defendant. *See* 42 C.F.R. § 411.26.

70.    Plaintiffs complied with any conditions precedent to the institution of this action, to the extent applicable.

71.    Defendant failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

72.    Defendant failed to pay each enrollee's covered losses, and Defendant had no reasonable proof to establish that it was not responsible for the payment.

73.    Defendant's failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein. Plaintiffs and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical

expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

74.    Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

75.    WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

    a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the Class;

    b.  designate Plaintiffs as representative for the Class and Plaintiffs' undersigned counsel as Class Counsel for the Class; and

    c.  issue a judgment against Defendant that:

        i.  grants Plaintiffs and the Class Members a reimbursement of double damages for those monies the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

        ii.  grants Plaintiffs and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

        iii.  grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

        iv.  grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: <u>November 7, 2018</u>.         Respectfully submitted,

                        */s/ Richard D. Meadow*
                        **The Lanier Law Firm, P.C.**
                        *Counsel for Plaintiff*

6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200

Richard D. Meadow, Esq., NY. Bar No. 1963578
Southern District Bar No. RM2621
E-mail: richard.meadow@lanierlawfirm.com

**Pulaski Law Firm, PLLC**
*Counsel for Plaintiff*
2925 Richmond Ave, Ste 1725
Houston, Texas 77098
Telephone: (713) 664-4555

Adam K. Pulaski, Esq., TX. Bar No. 24079836
*Pro Hac Vice Pending*
E-mail: adam@pulaskilawfirm.com

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of this motion was electronically filed with the Clerk of the Court *via* CM/ECF on this 7th day of November, 2018. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either *via* transmission of Notices of Electronic Filing generated by CM/ECF or some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

*/s/ Richard D. Meadow*
Richard D. Meadow